# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

KATHLEEN R. JACKSON, :

    Plaintiff, :

vs. : CA 09-0807-C

MICHAEL J. ASTRUE, :
Commissioner of Social Security,
     :
    Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action, pursuant to 42 U.S.C. § 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income benefits. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. 636(c), for all proceedings in this Court. (Doc. 19 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case . . . and order the entry of a final judgment, and conduct all post-judgment proceedings."); *see also* Doc. 20 (order of reference)) Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the parties' arguments at the June 15, 2010 hearing before the Court, it is determined that the Commissioner's decision denying plaintiff benefits should be reversed

and remanded for further proceedings not inconsistent with this decision.[1]

Plaintiff alleges disability due to depression, chronic back pain, and anemia. The Administrative Law Judge (ALJ) made the following relevant findings:

> **2. The claimant has the following severe impairments: Anemia and Depression secondary to a general medical condition. (20 CFR 416.921 *et seq*.).**
>
> . . .
>
> The claimant alleges an inability to work because of a combination of physical and mental health problems including anemia, back pain, myalgias, severe headaches, and difficulty concentrating.
>
> . . .
>
> At the request of the Social Security Administration, the claimant underwent a consultative physical examination by Dr. John T. Houston in March, 2007. Dr. Houston noted that the claimant's primary complaint was low back pain, for which she had not had any regular medical treatment. On physical examination of the claimant, Dr. Houston noted that the claimant had some decreased range of motion in her dorsolumbar spine, bilateral wrist tenderness, and bilateral knee crepitus, but he found no other abnormalities. Dr. Houston also obtained x-rays of the claimant's lumbar spine which were negative. He stated his diagnostic impressions as chronic low back pain, anemia, and depression. Dr. Houston concluded that, based on his examination of the claimant, she had no impairment in her ability to sit and that she could stand for short periods, walk short distances, lift and carry light loads, handle objects, and hear and speak without difficulty.
>
> There is no documentary evidence that the claimant sought or received medical treatment for any medical condition during 2007 until she

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Doc. 19 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

presented to the Franklin Primary Health Center in October, 2007. The treatment note reflects that the claimant presented to the Franklin Health Center in October, 2007 with a complaint of low back pain for one month, only partially relieved with Advil. The claimant denied any other symptoms. She rated her pain level at that time as a "5" on a scale of 1 to 10. The claimant was administered an intramuscular injection for her back pain and given prescriptions for a non-steroidal anti-inflammatory medication and a muscle relaxant. The claimant returned to the Franklin Health Center in November, 2007 for follow-up evaluation and, in addition to back pain, she reported that she had blood in her stool. The treatment note for that visit indicates that the claimant was administered another intramuscular injection for her back pain and that she was referred to an OB/GYN and a gastroenterologist. The claimant was next seen at the health center in February, 2008 for low back pain and the claimant was prescribed over-the-counter Tylenol for her pain. At her May, 2008 visit, the claimant continued to complain of back pain and she also complained of abdominal pain. She was prescribed a medication for her back pain, and she was also given refills of her medications for anemia.

. . .

**3.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (20 CFR 416.925 and 416.926).**

. . .

**4.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform work activities at the light strength or exertional level, in function-by-function physical terms (SSRs 83-10 and 96-8p) as defined in 20 CFR 416.967(c). The claimant's specific physical capacities and limitations during the period of adjudication have been the ability to sit for a total of about 6 hours during an 8-hour workday, the ability to stand and/or walk for a total of about 6 hours during an 8-hour workday, the ability to frequently lift and/or carry 10 pounds, the ability to occasionally lift and/or carry up to 20 pounds, and the unlimited ability to push and/or pull except as shown for lift and/or carry. The claimant has no significant postural, manipulative, visual, communicative, or environmental limitations. The claimant's mental**

**residual functional capacity has entailed nonexertional moderate limitation in her abilities to understand, remember, and carry out detailed instructions, to maintain attention and concentration for extended periods, to interact appropriately with the general public, and to respond appropriately to changes in the work setting. The claimant's abilities to understand, remember, and carry out very short and simple instructions, to sustain an ordinary routine without special supervision, to work in coordination with or proximity to others without being distracted by them, to make simple work-related decisions, to ask simple questions or request assistance, to accept instructions and respond appropriately to supervisors, to get along with coworkers or peers, and to maintain socially appropriate behavior are not significantly limited. It is noted by the undersigned that simple and repetitive, unskilled work tasks would not have been precluded. SSR 85-15 provides, in pertinent part, that in the evaluation of mental impairments, the final consideration is whether the individual can be expected to perform unskilled work. Unskilled jobs deal primarily with objects, rather than data or people, frequently entail lesser amounts of judgment and more routinization, and hence are more likely to present accommodating work environments for an individual with severe mental impairments. Unskilled jobs, such as described herein, are recognized by regulation to exist in significant numbers throughout the regional and national economies (20 CFR 416.966). This total work capacity was not prohibited or significantly altered by continuous 12-month periods of impairment exacerbation during the period of adjudication[.]**

. . .

No credible treating or examining physician of record has opined that the claimant was disabled or functionally limited to any degree because of any physical impairment or from any resulting symptoms. Consequently, the Administrative Law Judge has assigned substantial evidentiary weight to the findings and conclusions of the State Agency psychological consultant, Dr. Donald E. Hinton, in Exhibit 15F and to those of the State Agency disability specialist in Exhibit 16F. Both Dr. Hinton's and the disability specialist's conclusions are consistent with and supported by the objective medical evidence contained in the record, including the findings and conclusions of the examining sources[,] Dr. Davis and Dr. Houston. The Administrative Law Judge acknowledges that, as non-examining sources, the State Agency medical and psychological consultants' opinions are not

entitled to controlling weight, but must be considered and weighed as those of highly qualified sources who are experts in the evaluation of the medical issues in disability claims under the Social Security Act. The opinions of a non-examining, reviewing physician are entitled to be accorded weight when they are consistent with the medical evidence of record, as they are in the present case. Because there is nothing inconsistent in the medical records listed by the non-examining, reviewing sources in this case and the conclusions as to the claimant's physical and mental impairments and corresponding physical and mental functional limitations, the Administrative Law Judge finds that those opinions are entitled to be accorded significant evidentiary weight.

. . .

**5. The claimant is capable of performing her past relevant work as a housekeeper. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity. (20 CFR 416.965).**

The claimant has past relevant work experience as a housekeeper. The vocational expert witness, Barry Murphy, testified that the claimant's past relevant work is classified as light, unskilled work. The undersigned Administrative Law Judge asked the vocational expert witness whether an individual of the claimant's age, education, and past relevant work experience, who possessed the residual functional capacity for light, unskilled work, as previously set out above in this decision, could perform the claimant's past relevant work. Mr. Murphy testified that such an individual as described in the Administrative Law Judge's hypothetical question would be capable of performing the claimant's past relevant work as a housekeeper.

Pursuant to SSR 00-4p, the vocational expert's testimony is deemed consistent with the information contained in the <u>DOT</u> and the Administrative Law Judge finds the vocational expert witness testimony credible and consistent with the other evidence in the record.

In comparing the claimant's residual functional capacity with the physical and mental demands of the claimant's past relevant work, the undersigned finds that the claimant is able to perform it as actually and generally performed. Therefore, based on the reliable testimony of the impartial vocational expert and based upon the entire record evidence, the

undersigned concludes that the claimant has remained capable of performing her past relevant work as a housekeeper, as that job is actually and generally performed in the national economy, during any consecutive 12-month period of time at issue. Thus, a finding of "not disabled" is proper at Step 4 of the sequential evaluation process for the period of adjudication.

**6.  The claimant has not been under a disability, as defined in the Social Security Act, since January 30, 2007, the date the application was filed. (20 CFR 416.920(f)).**

(Tr. 14, 16, 19, 19-20 & 22 (emphasis in original; some internal citations omitted)) The Appeals Council affirmed the ALJ's decision (Tr. 1- 3) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## **DISCUSSION**

In all Social Security cases, the claimant bears the burden of proving that she is unable to perform her previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors:  (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history.  *Id*. at 1005.  Once the claimant meets this burden, it becomes the Commissioner's burden to prove that the claimant is capable, given her age, education and work history, of engaging in another kind of substantial gainful employment which exists in the national economy.  *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that she could perform her past work as a

"housekeeper," is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[2]

Although the claimant bears the burden of demonstrating the inability to return to her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record. *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). Social Security Ruling 82-61 recognizes three possible tests for determining whether or not a claimant retains the capacity to perform his past relevant work. They are as follows:

> 1. Whether the claimant retains the capacity to perform a past relevant job based on a broad generic, occupational classification of that job, e.g., "delivery job," "packaging job," etc.[3]
>
> 2. Whether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she

---

[2] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

[3] As recognized in the ruling, use of this test is likely to be "fallacious and insupportable" because "[w]hile 'delivery jobs,' 'packaging jobs,' etc., may have a common characteristic, they often involve quite different functional demands and duties requiring varying abilities and job knowledge."

actually performed it.

    3.    Whether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy.[4]

Under § 404.1520(e) of the Commissioner's regulations, a claimant will be found to be "not disabled" when it is determined that she retains the residual functional capacity to perform the actual functional demands and job duties of a particular past relevant job or the functional demands and job duties of the occupation as generally required by employers throughout the national economy. SSR 82-61.

In this case, the ALJ has relied upon a combination of tests two and three above to determine that the claimant was capable of performing her past work as a housekeeper. (Tr. 22 ("The vocational expert witness, Barry Murphy, testified that the claimant's past relevant work is classified as light, unskilled work. . . . In comparing the claimant's residual functional capacity with the physical and mental demands of the claimant's past relevant work, the undersigned finds that the claimant is able to perform it as actually and generally performed."))

Section 404.1520(e) of the Commissioner's regulations requires a review and consideration of a plaintiff's residual functional capacity and the physical and mental demands of the past work before a determination can be made that the plaintiff can perform her past relevant work. Social Security Ruling 82-62 provides that evaluation

---

[4] The Dictionary of Occupational Titles' descriptions can be relied upon to define the job as it is usually performed in the national economy.

8

under § 404.1520(e) "requires careful consideration of the interaction of the limiting effects of the person's impairment(s) and the physical and mental demands of . . . her PRW to determine whether the individual can still do that work." *See also Lucas v. Sullivan*, 918 F.2d 1567, 1574 n.3 (11th Cir. 1990) (to support a conclusion that a claimant "is able to return to her past work, the ALJ must consider all the duties of that work and evaluate her ability to perform them in spite of her impairments").

> The RFC to meet the physical and mental demands of jobs a claimant has performed in the past (either the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy) is generally a sufficient basis for a finding of "not disabled."
>
> . . .
>
> The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit.

Sufficient documentation will be obtained to support the decision. Any case requiring consideration of PRW will contain enough information on past work to permit a decision as to the individual's ability to return to such past work (or to do other work). Adequate documentation of past work includes factual information about those work demands which have a bearing on the medically established limitations. Detailed information about strength, endurance, manipulative ability, mental demands and other

job requirements must be obtained as appropriate. This information will be derived from a detailed description of the work obtained from the claimant, employer, or other informed source. Information concerning job titles, dates work was performed, rate of compensation, tools and machines used, knowledge required, the extent of supervision and independent judgment required, and a description of tasks and responsibilities will permit a judgment as to the skill level and the current relevance of the individual's work experience.

SSR 82-62. In finding that a claimant has the capacity to perform a past relevant job, the decision of the Commissioner must contain among the findings, a finding of fact as to the claimant's residual functional capacity, a finding of fact as to the physical and mental demands of the past job/occupation, and a finding of fact that the claimant's residual functional capacity would permit a return to the past job or occupation. *Id.*

In this case, plaintiff contends that the ALJ made the following errors: (1) he erred in ignoring the opinion of Patricia Noonan, a certified registered nurse practitioner; (2) he erred in failing to order a consultative psychological/psychiatric examination; (3) he erred in adopting the conclusions of a non-acceptable state agency non-medical source to support a light physical residual functional capacity; (4) he erred in determining she does not have a severe impairment of chronic back pain; and (5) he erred in finding that she can return to her past work as a housekeeper. Because the undersigned agrees with plaintiff that the ALJ erred in implicitly finding that her chronic back pain is not a severe

impairment and in relying upon the physical RFC completed by a disability specialist, the undersigned does not consider the other errors raised by Jackson. *See Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the 'misuse of the expert's testimony alone warrants a reversal,' we do not consider the appellant's other claims.").

    A.    **The ALJ's Implicit Determination that Plaintiff's Chronic Back Pain is a Non-severe Impairment.** The Commissioner's severity regulation requires the claimant to make a threshold showing that she has an impairment which significantly limits her physical or mental ability to perform basic work activities. 20 C.F.R. §§ 416.920(c), 416.921(a) (1998); *Bowen v. Yuckert,* 482 U.S. 137, 147 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) ("At the second step, [the claimant] must prove that she has a severe impairment or combination of impairments."), *cert. denied*, 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000). Basic work activities include functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; understanding, carrying out and remembering simple instructions; use of judgment, responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b). An impairment can be considered not severe "only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler,* 724 F.2d

914, 920 (11th Cir. 1984); see *Yuckert, supra*, 482 U.S. at 153, 107 S.Ct. at 2297 ("The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education and experience were taken into account.").[5]

> Inherent in a finding of a medically not severe impairment or combination of impairments is the conclusion that the individual's ability to engage in SGA [substantial gainful activity] is not seriously affected. Before this conclusion can be reached, however, an evaluation of the effects of the impairment(s) on the person's ability to do basic work activities must be made. A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and the informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of the function is inherent in the medical process itself.

SSR 85-28. The claimant's burden at step two of the sequential evaluation process is mild. *McDaniel v. Bowen,* 800 F.2d 1026, 1031 (11th Cir. 1986) ("Step two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected."). A claimant need only show that "her impairment is not so slight and its effect is not so minimal." *Id.*

---

[5] It is clear that in *Yuckert,* the Supreme Court did not impose a standard higher than the *de minimis* standard set out in *Brady*. *See Stratton v. Bowen*, 827 F.2d 1447, 1451 n.7, 1452 n.9, 1452-1453 (11th Cir. 1987).

The record in this case contains significant evidence establishing that the claimant suffers from chronic back pain, an impairment which, not surprisingly, is often recognized as a severe impairment. *Lavinskey v. Astrue*, 2008 WL 895722, *1 (S.D. Ala. 2008) (the ALJ concluded in finding number 2 that "**[t]he claimant has the following medically determinable impairments: back pain and depression[.]**"); *see also Pettit v. Commissioner, Social Security Administration*, 2008 WL 3992246, *2 (D. Idaho 2008) ("The ALJ found that Petitioner has the severe impairment of chronic pain[.]"). The evidence of record in this case regarding Jackson's chronic back pain includes her numerous visits to Franklin Primary Health Center, Inc. in 2007 and 2008 for treatment (including injections) of same (Tr. 328-336) and a consultative report from Dr. John T. Houston dated March 15, 2007 which recognized as the consultant's primary impression chronic back pain (Tr. 279) and concluded by noting that he "found no impairment in her ability to sit, ***stand for short periods, walk short distances***, lift and carry light loads, handle objects, hear or speak." (Tr. 280 (emphasis supplied)). While the foregoing medical evidence might not establish that Jackson is disabled due to her chronic back pain, this evidence does provide sufficient evidence to satisfy the low or *de minimis* standard for a severe impairment. *See McDaniel, supra*. More to the point, the evidence from Dr. Houston clearly establishes that plaintiff's chronic back pain significantly limits her physical ability to perform the basic work activities of walking and standing. Because the evidence establishes that plaintiff's chronic back pain is a severe impairment and the

ALJ erred in not finding Jackson's back pain to be a severe impairment,[6] this cause must be reversed and remanded for further proceedings not inconsistent with this decision.

**B.   ALJ's Reliance on the Physical RFC Completed by a Disability Specialist**.   Jackson also contends that the ALJ erred in relying upon the physical residual functional capacity assessment completed by a disability specialist in determining that she can perform the exertional requirements of a full range of light work and, therefore, the requirements of her past work as a "housekeeper."

---

[6]   A reading of the ALJ's decision in this case nowhere reveals that he explicitly determined that plaintiff's chronic back pain was not a severe impairment. In fact, nowhere does the ALJ cite to this Circuit's *de minimis* standard and find that plaintiff's chronic back pain does not meet that standard. Instead, the ALJ simply recounts the evidence, including that which relates to plaintiff's chronic back pain, but only includes in his specific finding number 2 that her severe impairments are anemia and depression. (*See* Tr. 14-16)

Contrary to the ALJ's assessment in the decision denying Jackson SSI benefits (*see* Tr. 19 & 19-20 ("[T]he Administrative Law Judge has assigned substantial evidentiary weight to the findings and conclusions of the . . . State Agency disability specialist in Exhibit 16F. . . . The Administrative Law Judge acknowledges that, as non-examining sources, the State Agency medical and psychological consultants' opinions are not entitled to controlling weight, but must be considered and weighed of those of highly qualified sources who are experts in the evaluation of medical issues in disability claims under the Social Security Act.")), an RFC assessment completed by a disability specialist is entitled to no weight, *compare Traylor v. Astrue*, 2010 WL 920114, *5 (M.D. Ala. 2010) ("The referenced opinion, however, is not that of a physician; it is the opinion of the DDS disability examiner, Karen Wiggins. Her opinion is not, as the Appeals Council apparently believed, entitled to consideration as an expert medical opinion." (internal citation omitted)); *Foxx v. Astrue*, 2009 WL 2899048, * 7 (S.D. Ala. 2009) ("While the findings of state agency medical consultants regarding the nature and severity of an individual's impairments must be considered and can be relied upon when they do not conflict with the opinions of examining sources, there is no evidence before the Court that Carol M. Davis, S.D.M., the person who completed the RFC assessment is a medical consultant whose opinion qualifies as a medical source opinion."); *Bolton v. Astrue*, 2008 WL 2038513, *4 (M.D.Fla. 2008) ("'An SDM is not a medical professional of any stripe, and' a finding from such an individual is 'entitled to no weight as a medical opinion, nor to consideration as evidence from other non-medical sources.'"); *and Casey*

*v. Astrue*, 2008 WL 2509030, *4 n.3 (S.D. Ala. 2008) ("[A]n RFC assessment completed by a disability specialist is entitled to no weight.") *with* 20 C.F.R. § 416.913(c) ("At the administrative law judge and Appeals Council levels, and at the reviewing official, administrative law judge, and Decision Review Board levels in claims adjudicated under the procedures in part 405 of this chapter, we will consider residual functional capacity assessments made by State agency medical and psychological consultants, medical and psychological experts . . ., and other program physicians and psychologists to be 'statements about what you can still do' made by non-examining physicians and psychologists based on their review of the evidence in the case record.") & (d)(1)-(4) (describing evidence that may be used from other acceptable medical and non-medical sources but never identifying disability specialists as an acceptable non-medical source); *cf. Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990) (the opinion of a non-examining, reviewing physician "is entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision."). That the RFC assessment completed in this case by disability specialist Beverly Holt (Tr. 305-312) is entitled to no weight is particularly appropriate since Holt's specific finding that Jackson can stand and/or walk for about 6 hours in an 8-hour workday (Tr. 306), a prerequisite for the full range of light work activity,[7] is inconsistent with and cannot be reconciled with

---

[7] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be

16

the findings of Dr. Houston, a consultative examiner, that Jackson has no impairment with respect to standing "for short periods" and walking "short distances[.]" (*Compare* Tr. 306 *with* Tr. 280) The limitations placed by Dr. Houston on plaintiff's physical abilities to walk and stand are simply not consistent with the finding that plaintiff can perform the substantial walking and standing required of the full range of light work, SSR 83-10, *supra*, and her past work as a "housekeeper"[8] (*see, e.g.,* Tr. 144 (plaintiff's description of her janitorial work at Rite Aid from October 30, 2003 through August, 2004 as part-time work of 2-3 hours per day which required 2 hours of standing and walking, stooping, crouching and crawling)).[9] While it would have been consistent with Dr. Houston's

---

considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 416.967(b) (2009). Social Security Ruling 83-10 provides that unskilled light jobs require being on one's feet up to two-thirds of a workday and the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.

[8] In light of the undersigned's analysis of Dr. Houston's opinion and assessment of plaintiff's condition, the defendant's harmless error argument in this regard (*see* Doc. 17, at 9-10) is not persuasive.

[9] Plaintiff's consistent description of her janitorial work at Rite Aid as part time (Tr. 144), and the minimal wages she earned from October of 2003 through August of 2004 (*see* Tr. 116-117 (wages of $831.64 in 2003 and $3,997.34 in 2004)), raise a question in the undersigned's mind regarding whether such work constitutes substantial gainful activity. *Compare Martinez v. Commissioner of Social Security*, 132 Fed.Appx. 310, 313 (11th Cir. 2005) ("'Generally, in evaluating . . . work activity for substantial gainful activity purposes, [the SSA's] primary consideration will be the earnings . . . derive[d] from the work activity.' . . . Earnings that will ordinarily show engagement in substantial gainful activity include average monthly earnings of over $700 for the year 2001 and slightly more for 2002.") *and Wiles v. Astrue*, 2009 WL 465027, *4 (M.D. Fla. 2009) ("Plaintiff's testimony and his earnings record reveals that Plaintiff's job as a tax clerk was not substantial gainful activity because this job was only performed on a part-time basis, and the amounts earned by Plaintiff were insufficient to amount to substantial gainful activity.") *with* 20 C.F.R. §§ 416.972 & 416.974. On remand, the ALJ need direct his attention to this issue as well.

opinion for the disability specialist to find that plaintiff can perform the full range of sedentary work activity, it is clear to the undersigned that such a scenario would never have taken place since such a finding would have led to Jackson being found disabled under the grids (*compare* Tr. 48, 52, 54 & 80-81 (on January 22, 2009 hearing date plaintiff was 53 years old, with an eighth grade education, and had performed work at the light unskilled level) *with* 20 C.F.R. Pt. 404, Subpart P, Appendix 2, Grid Rule 201.09 (an individual closely approaching advanced age,[10] with a limited or less education, and only unskilled work experience is presumed disabled)). Given that the ALJ improperly accorded weight to the RFC assessment completed by a disability specialist, his determination that plaintiff has the RFC to perform the physical requirements of her previous work as a "housekeeper"[11] is not supported by substantial evidence. Accordingly, this cause must be remanded for further proceedings not inconsistent with this decision.[12]

---

[10] An individual closely approaching advanced age is aged 50 through 54. 20 C.F.R. § 200.00(g) (2009).

[11] It is interesting that the ALJ insists on describing plaintiff's past work at Rite Aid as a housekeeper as opposed to that of a janitor, as plaintiff herself described such work (*see* Tr. 143-144). On remand, assuming the ALJ correctly establishes that plaintiff's previous work at Rite Aid constitutes substantial gainful activity, he need establish that such work is properly described as work as a housekeeper, as opposed to work as a janitor, and that such description is consistent with the DOT. Given that plaintiff's previous job was performed at a business establishment, as opposed to in a private home, it appears to the undersigned that such work would be better described as janitorial work.

[12] In light of the fact that Dr. Hinton's mental RFC assessment will be stale on remand (*see* Tr. 287 (RFC dated April 9, 2007)), it is suggested that plaintiff be referred for a consultative psychiatric evaluation and that the examining physician complete a mental RFC

## **CONCLUSION**

---

assessment and PRTF as part of his/her evaluation of plaintiff.

It is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g),[13] *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer,* 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 21st day of June, 2010.

      s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

---

[13] Although the plaintiff's application in this case is solely for supplemental security income benefits pursuant to 42 U.S.C. § 1383(c)(3), remand is proper under sentence four of § 405(g) because 1383(c)(3) provides that "[t]he final decision of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determination under section 405 of this title."